# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| LAUREN BRUSATI, | **CV-25-32-GF-BMM** |
| Plaintiffs, | |
| vs. | |
| MONTANA FEDERAL CREDIT UNION, | **ORDER ON**<br>**MOTION TO DISMISS** |
| Defendant. | |

## INTRODUCTION

Lauren Brusati ("Plaintiff") brought suit against Montana Federal Credit Union ("MFCU" or "Defendant") on behalf of herself and all others similarly situated. Plaintiff alleges that MCFU has violated the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA"), and Regulation E thereto, 12 C.F.R. § 1005.1, *et seq*. ("Regulation E"). (Doc. 21 ¶ 1.) MFCU moves to dismiss Plaintiff Brusati's amended class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 31.) The Court held a hearing on November 10, 2025. (Doc. 45.)

## BACKGROUND

Montana Federal Credit Union ("MFCU") is a federal credit union with locations and customers in Montana. (Doc. 21 ¶ 8.) MFCU offers its customers banking services. (*Id*.) Brusati held an account with MFCU. (*Id*. ¶ 7.) Brusati is

enrolled in MFCU's overdraft protections service for one-time debit card and ATM transactions. (*Id*. ¶ 63.)

The Board of Governors of the Federal Reserve System ("Board") created Regulation E Model Form-A9 in 2009. 74 Fed. Reg. 59,033, 59,036. Model Form-A9 provides a template of an overdraft agreement "that institutions may use to satisfy the notice requirement" of EFTA and Regulation E. *Id*. MFCU modeled its overdraft service agreement after Model Form-A9. (Doc. 32 at 26.)

Debit card transactions follow a two-step process: (1) authorization and (2) settlement. (Doc. 35 at 10.) A seller first authorizes a purchase by swiping the debit card of a consumer. (*Id*.) The purchase places a hold on the consumer's account. (*Id*.) The hold reduces the account's available balance but does not affect the account's actual balance. (*Id*.) The seller next settles the transaction by requesting payment from the consumer's financial institution. (*Id*.) This process creates a gap of time between authorization and settlement. (*Id*. at 8–9.) An account's available balance may differ from its actual balance during this period. (*Id*.)

Financial institutions assess overdraft fees in two methods. The first method uses an account's available balance. The second method uses an account's actual balance. MFCU uses the available balance method. (Doc. 32 at 24.) MFCU discloses in full its method of assessing overdraft fees in its membership agreement

rather than in its opt-in agreement. (*Id*.) The membership agreement details scenarios in which the available balance method may result in excess overdraft fees to the consumer. (*See id*. at 25.) Brusati filed a putative class action complaint against MFCU on April 22, 2025, (Doc. 1,) and am amended class action complaint against MFCU on July 2, 2025 (Doc. 21). The amended complaint alleges that MFCU violated the notice and affirmative consent requirements of the EFTA and Regulation E. (Doc. 21 ¶¶ 83–97, citing 15 U.S.C. § 1693 and 12 C.F.R. § 1005.) The amended complaint further alleges, in the alternative, that MFCU's policy unjustly enriched MFCU at the expense of Brusati. (Doc. 21 ¶¶ 92–102.)

## LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires claimants to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts

alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint must contain sufficient factual matter to state a plausible claim for relief on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim proves plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard does not require probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must "take[] as true and construe[] in the light most favorable to plaintiffs" all factual allegations set forth in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *National Association for the Advancement of Psychoanalysis v. California Board of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citing *Halkin v. Verifone Inc*. 11 F.3d 865, 868 (9th Cir. 1993)).

## DISCUSSION

MFCU moves for dismissal of the complaint for failure to state a claim for relief under EFTA and Regulation E. (Doc. 32.) MFCU argues that Brusati's claims are barred because the Federal Reserve Board ("FRB") rejected any requirement

that credit unions include descriptions like Brusati suggests in the opt-in form. (*Id*. at 16.) MFCU further asserts that EFTA's safe harbor provision insulates it from liability because MFCU modeled its opt-in agreement after the CFPB Model Form A-9. (*Id*. at 26 citing U.S.C. § 1693m(d).) MFCU also argues that the fact that Brusati entered into a contract with MFCU for her account services bars her unjust enrichment claim. (*Id*. at 27.) The Court will address each argument in turn.

I.    Whether MFCU's Opt-in Agreement Comports with the Requirements of the EFTA

MFCU argues that EFTA and Regulation E require institutions to provide a notice and opt-in form that substantially conforms with Model Form A-9. (Doc. 32 at 14.) MFCU asserts that its notice and opt-in form substantially conform to Model Form A-9. (*Id*. at 22.) MFCU further argues that Regulation E prohibits it from including additional clauses or information. (*Id*.)

Brusati argues that Regulation E "permits financial institutions to modify their opt-in forms' language as necessary to accurately disclose their overdraft programs, requiring only 'substantial similar[ity]' between the Model Form and MFCU's Opt-In Form, not a blind adoption of the Model Form's language." (Doc. 35 at 30 citing 12 C.F.R. § 1005.17(d).) Brusati asserts that in order to comply with Regulation E, MFCU must create an opt-in form that is substantially similar to Model Form A-9 "*but also* [] accurately reflects its overdraft policies for debit card transactions." (*Id*.) [emphasis added]. Brusati argues that MFCU's opt-in form does

5

not accurately describe MFCU's overdraft practice because MFCU's opt-in form does not clarify whether MFCU determines overdrafts at authorization or settlement of a debit card transaction. (*Id*. at 7.) Brusati concedes that MFCU's opt-in form discloses which balance MFCU uses to determine overdrafts and withdraws her challenge to this aspect of the form.

Regulation E states that "[t]he notice required by [Regulation E] shall be substantially similar to Model Form A-9 [], include all applicable items in this paragraph, and may not contain any information not specified in or otherwise permitted by this paragraph." 12 C.F.R. § 1005.17(d). MFCU argues that this language prohibits MCFU from including additional information, such as at what point it determines overdrafts. (Doc. 32 at 22.) The additional information permitted by § 1005.17(d) includes the following: (1) overdraft service; (2) fees imposed; (3) limits on fees charged; (4) disclosure of opt-in right; (5) alternative plans for covering drafts; and (6) "permitted modifications and additional content" which includes modifications institutions may make to their opt-in forms. 12 C.F.R. § 1005.17(d)(1)(6.)

MFCU argues that § 1005.17(d) prohibits it from making any changes to Model Form A-9 but fails to explain why the changes it already has made in its opt-in form are lawful under its own reasoning. The language in Model Form A-9 states that "[a]n overdraft occurs when you do not have enough money in your

account to cover a transaction, but we pay it anyway." (Doc. 39 Ex. 1.) MCFU's opt-in form states that "[a]n overdraft occurs when you do not *have a sufficient available balance* in your account, but we pay it anyway." (Doc. 21 Ex. A.) [emphasis added]. This distinction in language appears to indicate that MCFU uses available balance rather than account balance to determine overdrafts. MCFU also fails to explain why the additional information permitted under § 1005.17(d) cannot include a clarification stating whether MFCU determines overdrafts at authorization, or settlement, of a debit card transaction. It proves at least plausible that it is lawful, and, in fact, preferred, for institutions to include a clarification of which balance they use to determine overdrafts. It also may be lawful for institutions to clarify *when* they determine overdrafts.

MFCU also points to the history of Regulation E, research conducted in 2008 by Macro International, Inc., and the Consumer Financial Protection Bureau's ("CFPB") 2019 Request for Information, to support its position. (*Id*. at 16-22.) The Court finds these arguments unpersuasive. MFCU fails to demonstrate why Brusati's claims should be dismissed at this stage of litigation based on the history of EFTA and Regulation E. Congress enacted EFTA to protect consumer rights. 15 U.S.C. § 1693.

"EFTA is [a] 'remedial consumer protection statute' which [courts] 'read liberally to achieve' the goal of protecting consumers." *Curtis v. Propel Prop. Tax*

*Funding, LLC*, 915 F.3d 234, 239 (4th Cir. 2019). EFTA "establishes the rights, liabilities, and responsibilities of consumers in electronic fund transfer (EFT) systems." 74 Fed. Reg. 59,033, 59,033 (Nov. 17, 2009). Brusati's claims involve an alleged violation of EFTA and Regulation E as a consumer of MFCU's retail banking services. (Doc. 21 ¶¶ 1-6). Brusati alleges that "EFTA . . . is intended to protect individual consumers engaging in electronic fund transfers." (*Id*. ¶ 12.) These allegations also fit within the purposes and history of Regulation E and EFTA. 15 U.S.C. § 1693; *see also Curtis*, 915 F.3d at 239.

## II.     Whether MFCU Satisfied the Notice and Affirmative Consent Requirements of EFTA and Regulation E

EFTA and Regulation E require financial institutions to seek the "affirmative consent" of consumers before enrollment in an overdraft service. 74 Fed. Reg. 59,033, 59,036 (Nov. 17, 2009) (codified at 12 C.F.R. § 205.17). Institutions must give written notice to consumers to obtain proper consent. 12 C.F.R. § 205.17(b)(1)(i). A financial institution's notice must describe overdraft policies in a "clear and readily understandable manner." *Fludd v. South State Bank*, 566 F. Supp. 3d 471, 476 (D.S.C. 2021) (citing 12 C.F.R. § 1005.4(a)(1)).

Brusati alleges that she was not able to fully understand MFCU's overdraft policy based on the opt-in form and thus she could not affirmatively consent to MCFU's overdraft service. (Doc. 35 at 7.) MFCU relies on the same arguments

discussed above based on alleged compliance with Regulation E and substantial similarity with Model Form A-9. The Court again finds that it is plausible that MFCU has not fully complied with the notice and affirmative consent requirements of Regulation E by failing to include information in its opt-in form describing when MFCU determines overdrafts.

Brusati also alleges that the overdraft agreement must serve as a standalone document separate from MFCU's account agreement. (Doc. 35 at 23-24.) This claim also survives the motion to dismiss. Regulation E requires notices to serve as "stand-alone documents." *Fludd*, 566 F. Supp. 3d at 476; *see also* 12 C.F.R. § 1005.17(b)(1)(i) ("Provides the consumer with a notice in writing . . . segregated from all other information.). MFCU may not rely on its account disclosure agreements to satisfy the notice and affirmative consent requirements of the EFTA and Regulation E.

III.    Whether MFCU Can Claim Safe Harbor

MFCU contends that its substantially similar use of Model Form A-9 insulates it from liability under EFTA and Regulation E. (Doc. 32 at 26.) Brusati contends that the safe harbor provisions of EFTA and Regulation E fail to insulate MFCU from liability as Brusati challenges the content of the notice provided by MFCU. (Doc. 35 at 28.) The safe harbor provision provides immunity from civil liability under EFTA and Regulation E in two circumstances. § 1693m(d)(1)–(2).

First, the provision protects institutions from actions made "in good faith in conformity with any [Board] rule, regulation, or interpretation." § 1693m(d)(1). Second, the provision protects institutions from "any failure to make disclosure in proper form if a financial institution utilized an appropriate model clause issued by the Board" unless a court determines the model clause to be invalid. 15 U.S.C. § 1693(m)(d)(2). MFCU simplifies this language to characterize the safe harbor provision as containing two components. (Doc. 39 at 4.) The first component outlines what an institution must do to gain safe harbor. (*Id*.) This requirement outlines the use of appropriate model clauses and requires CFPB to issue alternative model clauses as appropriate. (*Id*.) The second component clarifies the types of suits from which the institution will be protected. (*Id*.)

MFCU argues that it complies with the first component of the safe harbor provision by using Model Form A-9. (*Id*. at 5.) MFCU contends that it is not required to include any additional language about its overdraft service because CFPB provided no alternative clauses. (*Id*.) MFCU argues that because CFPB is required to issue "appropriate alternative clauses," no appropriate alternative clauses must exist. (*Id*.) The Court finds this argument unavailing.

The Court further notes that this argument proves inconsistent with the fact that MFCU already has modified its overdraft form from Model Form A-9. MFCU acknowledges that this modification proves lawful which contradicts its arguments

about Brusati's interpretation rendering the safe harbor provision illusory. The fact that MFCU has changed its overdraft form from Model Form A-9 also undermines its arguments that it complies with the first component of the safe harbor provision. It must be the case either that MFCU is not complying with the first component of the safe harbor provision, or that slight modifications to more accurately reflect an institution's overdraft services are appropriate under the statute. As the Court already noted, Regulation E "permits financial institutions to modify their opt-in forms' language as necessary to accurately disclose their overdraft programs, requiring only 'substantial similar[ity]' between the Model Form and MFCU's Opt-In Form, not a blind adoption of the Model Form's language." (Doc. 35 at 30 citing 12 C.F.R. § 1005.17(d).)

MFCU moves on to the second component and contends that it is entitled to safe harbor under the statute based on the interpretation of "form" provided in *Adams v. Liberty Bank*, No. 3:20-CV-01601(MPS), 2021 WL 3726007 (D. Conn. Aug. 23, 2021) and *Tilley v. Mountain Am. Fed. Credit Union*, No. 217CV01120JNPBCW, 2018 WL 4600655 (D. Utah Sept. 25, 2018). (Doc. 39 at 13, 20.) Brusati argues that the overwhelming case law supports the interpretation found in *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1238 (11th Cir. 2019). (Doc. 35 at 28.)

MFCU argues that *Tilley* and *Adams* recognize that the second component of the safe harbor provision protects institutions "from claims arising out of a failure to use particular 'words, phrases, and sentences' in a disclosure, i.e., from claims about a disclosure's inadequate content, if the bank 'utilized an appropriate model' clause 'issued by the Bureau or the Board.'" (Doc. 39 at 20 citing *Adams*, No. 3:20-CV-01601(MPS), 2021 WL 3726007, at *6; *see also Tilley*, No. 217CV01120JNPBCW, 2018 WL 4600655, at *5.) Brusati argues that the safe harbor provision does not protect institutions from challenges to the content of an overdraft from, but rather from challenges to the "form of notice provided." (Doc. 35 at 28.) MFCU contends that such an interpretation means that as long as an institution used Model Form A-9, the institution would be insulated from liability regardless of whether the institution ever even provided the form to the consumer because they would be protected from challenges to the procedures of disclosure. (Doc. 39 at 20-21 citing *Adams*, No. 3:20-CV-01601(MPS), 2021 WL 3726007, at *6-8.) The Court disagrees.

*Tims* recognized that the safe-harbor provision "insulates financial institutions from EFTA claims based on the *means* by which the institution has communicated its overdraft policy." 935 F.3d at 1244–45. *Tims* further reasoned, however, that the safe-harbor provision "does not shield [financial institutions] for claims based on their failure to make adequate disclosures." *Id.* A financial

institution thus "strays beyond the safe harbor when communications within its overdraft disclosure inadequately inform the consumer of the overdraft policy that the institution actually follows." *Id.*, *citing Berenson v. Nat'l Fin. Servs., LLC*, 403 F. Supp. 2d 133, 151 (D. Mass. 2005) (holding that the safe harbor "insulates an institution only from a challenge as to the form—not the adequacy—of the disclosure").

*Tims* nowhere states that an institution using an appropriate model form would be insulated from liability regardless of whether the institution provided the form to the consumer, showed it in writing, or acted in one of the several ways suggested by *Adams*, No. 3:20-CV-01601(MPS), 2021 WL 3726007, at *7. *Tims* specifically states that "to comply with the regulation, financial institutions must make the disclosure 'in writing, or if the consumer agrees, electronically' and must further 'segregate[ ]' the notice 'from all other information.' 12 C.F.R. § 1005.17(b)(1)(i)." *Tims* determined that the format of the notice "required by § 1005.17(b)(1)(i) must be 'substantially similar to Model Form A-9.'" *Id.* citing § 1005.17(d). Finally, "[f]inancial institutions must also [p]rovide[ ] the consumer with confirmation of the consumer's consent in writing, or if the consumer agrees, electronically." *Id.* citing § 1005.17(b)(1)(iv).

The simplest reading of *Tims's* interpretation of the safe-harbor provision recognizes that financial institutions would be insulated from challenges to the

form, or procedures the financial institution followed, if the financial institution

complied with the proper form. "Therefore, [MFCU] is shielded from liability by

the EFTA's safe harbor provision only if (1) it followed all proper procedures and

(2) Model Form A-9 accurately reflects its overdraft service." *Cortes v. Univ. &*

*State Emps. Credit Union*, No. 22-CV-444-LAB-DEB, 2023 WL 12009972, at *11

(S.D. Cal. Mar. 13, 2023). This "ruling is consistent with the great weight of

district court authority to have considered the matter." *Tims*, 935 F.3d at 1245,

citing *Salls v. Dig. Fed. Credit Union*, 349 F. Supp. 3d 81, 91 (D. Mass 2018)

(collecting cases).

Brusati challenges the content of the form, or the substance. Courts have

interpreted the second circumstance to mean that the safe harbor provision

insulates "institutions from liability for violations arising from the form of notice

provided but not from inaccurate or misleading content of the notice." *Walbridge v.*

*Northcoast Credit Union*, 299 F. Supp. 3d 338, 349 (D. N.H. 2018). For example,

in *Pinkston-Poling v. Advia Credit Union*, a financial institution argued that its use

of a model disclosure form shielded it from liability under the "safe harbor"

provision. 2017 WL 5153218, at *2 (W.D. Mich. Apr. 20, 2017). The court

determined that the "safe harbor provision does not bar claims based on the content

or substance—as opposed to the form—of a Regulation E notice." *Id*. The court

reasoned that "an institution 'is protected from liability for failure to make

14

disclosures in proper form,' [] only if the 'institution uses [the form] accurately to reflect its service." *Id*. at *2 (citing 12 C.F.R. pt. 1005 Supp. I.).

The safe harbor provision fails to insulate MFCU from civil liability under EFTA and Regulation E. Brusati alleges that MFCU failed to "provide its customers with a 'clear and readily understandable' description of the overdraft program." (Doc. 21 ¶ 89, citing 12 C.F.R. § 1005.17.) Brusati's allegations amount to a challenge to the substance of the form as Brusati contends that MFCU's form fails to "reflect its services accurately." *Pinkston-Poling*, 2017 WL 5153218 at *2 (cleaned up). MFCU may not use the safe harbor provision as a defense when Brusati challenges the adequacy of the "content of the notice." *Walbridge*, 299 F. Supp. 3d at 349. The complaint survives MFCU's motion to dismiss on this basis.

IV.     Whether Brusati States a Claim for Unjust Enrichment

MFCU contends that Brusati failed to plead a claim for unjust enrichment as a valid express contract governs the dispute. (Doc. 32 at 27.) MFCU asserts that Brusati has a MFCU checking account governed by account documents. (Doc. 39 at 23.) MFCU argues these account documents function as contract documents. (*Id*.)

Brusati argues that the opt-in form represents the only relevant document in front of the Court when determining whether Brusati affirmatively consented to

MFCU's overdraft services. (Doc. 35 at 32.) Brusati contends that no enforceable contract will exist with respect to MFCU's assessment of overdraft fees on Brusati if the Court finds that Brusati was unable to affirmatively consent in the opt-in form because it was insufficient under Regulation E. (*Id.*)

"It is a well-established rule that there must be mutual assent or a meeting of the minds on all essential elements or terms to form a binding contract." *Hayashi v. Travelers Cas. Ins. Co. of Am.*, No. CV 20-111-BLG-TJC, 2022 WL 3541873, at *4 (D. Mont. Aug. 18, 2022) (quoting *Jarussi v. Sandra L. Farber Trust*, 445 P.3d 1226, 1232 (Mont. 2019) (quoting *Chadwick v. Giberson*, 618 P.2d 1213, 1215 (Mont. 1980)).) The parties' consent must be free, mutual, and communicated by each to the other. *Id.*, citing Mont. Code Ann. § 28-2-301. If Brusati was not informed of an essential element of the contract, or if she could not affirmatively consent in the opt-in form, then a valid contract does not exist between Brusati and MFCU. The Court declines to dismiss Brusati's unjust enrichment claim on that basis.

## CONCLUSION

The Court denies MFCU's motion to dismiss. (Doc. 31.) Brusati's amended complaint satisfies the requirements of Federal Rule Civil Procedure 12(b)(6). Brusati plausibly has alleged claims under the EFTA and Regulation E. Brusati also plausibly has pleaded unjust enrichment in the alternative.

## ORDER

Accordingly, **IT IS ORDERED** that MFCU's Motion to Dismiss (Doc. 31) is

**DENIED**.

DATED this 17th day of November, 2025.

_____
Brian Morris, Chief District Judge
United States District Court